MSWordDoc Word.Document.8 The principal issue before the federal circuit is whether the petitioners had raised non-frivolous allegations supporting the involuntariness of their terminations, their demotions, reassignment outside of the community area, and their retirements. There is evidence in the record to support the non-frivolous allegation that there was a postal service reorganization. There's no doubt that there were access positions and that the Postal Service conducted a national reorganization where it identified those positions as accessed and identified individuals who covered those positions to be removed from those positions and reassigned. Now the Postal Service had a yeoman-type effort of announcing to individuals that it was their intention not to reduce any one degree or pay. Is your contention that this was a reduction in force? There is evidence in the record to support, yes. The answer is yes. Clearly there was a reduction in force. There is evidence. And what follows from, if you were successful in convincing us that it was a reduction in force, what follows from that? What benefit is that to you? The benefit is that the appellants in this case were denied their procedural due process rights as veterans and that they... But those rights are allegedly created by the VEOA, right? No? No. The appellants in this case are alleging that their rights were under USERRA, 38 U.S.C. So how does USERRA apply? If it was a RIV, what's the significance of that for USERRA? The individuals were... There was critical information that was withheld from these individuals as to their veterans' preference rights. Veterans' preference rights coming from where? From USERRA? No. Veterans' preference rights coming under Title V, Code of Federal Regulations, Part 351, which deals with how RIVs are implemented. Veterans have special preferences during these RIV-type actions. With the information that you argue was withheld, was it withheld only from veterans or was it withheld from everyone involved in the RIV? Well, the Postal Service has denied that there was a reduction in force. Okay. Well, let me ask the question differently. What is it about the military status of your clients that implicates USERRA? The fact that they were military members and that they had entitlements under law, Section 40.43.11 states that a person who is a member of or who has been a member of the Uniform Service has rights in terms of retention of employment. Yes, there's a RIV. Don't we have a problem here that the Board has found? There's not a RIV. These people were reassigned, given a displaced point where they could take employment and most of them voluntarily accepted that. That's our issue, isn't it? The issue is whether there has been a RIV. Okay. The Board said there was not, that it was a reassignment through displacement and what, of course, if you're going to challenge their factual finding on that, you have a high burden to overcome. Is there anything arbitrary and capricious in their decision? There was no administrative hearing. There was no discovery in this matter. What evidence is there that there was not a RIV? Every iota of evidence points to the fact that there was a RIV. There was a reorganization. Were they all offered employment elsewhere, in fact, transferred elsewhere? The issue is not whether the Postal Service attempted not to conduct a RIV. The issue is the Postal Service violated the rights of individuals because they did conduct a RIV. Does the Postal Service have a right to transfer people to different posts as necessary to conduct their business? Absolutely. And if individuals are reassigned at the same grade and pay level, and if those process rights in order to challenge their standing. In this case... Now, Jones, he volunteered to be reassigned to New York. Wimberly requested and received appointment to a mail handler position. Ulrich and Rubinsky and Evangelista, they took early retirement rather than the reassignment. Of course, we have a lot of case law that says if you voluntarily retire, even if there are difficult choices to make in those voluntary retirements, that's beyond our jurisdiction as well. I'm trying to find... Give me your best case for... That there is a case here. That there is something we can review. What evidence do you have that Wimberly voluntarily accepted a lower grade? I'm going with what the board said. There is no evidence in the record that Wimberly voluntarily requested a lower grade. There is no evidence in the record that... He was terminated for refusing to accept reassignment and then chose voluntary retirement at that point. Is that correct? Right. Ulrich was terminated. Ulrich was terminated. That was an adverse action. Any employee who has rights as veterans, if they are terminated, are entitled to procedural due process rights. When an individual is not given those procedural due process rights, the federal circuit has even gone so far as to say that there has been a constitutional deprivation of due process. But those rights are dependent, as Chief Judge Reiter said, on finding this was a RIF, correct? No. That is partially correct. If Ulrich were terminated involuntarily, he was entitled to rights, whether there was a reduction in force or some other type action. For instance... But he chose voluntarily separation rather than reassignment, right? When he was terminated, the record in black and white stated that he was involuntarily terminated. What evidence is there that Ulrich resigned, requested to resign, that Ulrich requested a retirement? There is no evidence. He was involuntarily separated. Let us assume hypothetically that that is true, okay? In terms of whether it was a RIF, what is the standard for determining whether it is a RIF? Is there a regulation that describes what is the regulation? The standard is if there is evidence of a reorganization, which results... What regulation is this? Five, Code of Federal Regulations, Part 351. Okay. And what does it say? And that states that if there is a plan management action which results in certain positions being abolished and individuals are affected by being changed to a lower grade or a lower pay level... Which didn't happen here with respect to Ulrich. The reality is Ulrich never voluntarily decided to... No, no, forget about voluntariness, but I don't understand how there was a RIF with respect to him since he wasn't given a lower pay... He wasn't demoted. He was terminated. He was terminated for not accepting a reassignment. Pardon me? He was terminated for not accepting his reassignment. There is nothing in the record that indicates that Ulrich was separated for not accepting a reassignment. He was separated because his position was abolished. He was involuntarily... If there was no RIF, where did the procedural protections come from that you're arguing about? He suffered an adverse action under Five, Code of Federal Regulations, Part 752. An individual who is involuntarily separated for cause is entitled to due process rights. He was denied his due process rights. There is no decision that the Federal Circuit has issued in which an individual who has been involuntarily separated is not accorded procedural due process... But the board found this was voluntary, didn't it? What evidence... No, no, you have to show us where they were wrong. You don't... You have to prove they were wrong. There was no administrative hearing, there was no discovery, and Ulrich was involuntarily... All of which only happens if there's a RIF. An individual can be involuntarily separated for refusal to accept a reassignment. That could be an involuntary separation. Look at page 89 of the record. It's a notification of personal action to Ulrich, and under there, in the reasons for this, it says, employee failed to accompany activity in accepting the assignment. He'd been given a transfer memo, and that's why he was terminated. So then he would be separated for cause, whether it's an adverse action or a reduction in force. Now, but there was a... How could this not be a reduction in force? How could a plan management action, which results in the elimination of positions, which leads to a termination of employee... They don't just reduce the force, they reassign people because they need more people in New York and fewer people in South Carolina or whatever. No one's questioning that. The issue is if an individual is reassigned and the individual refuses the reassignment, then the individual has to be separated. Under any procedural aspect of this case, there has to be notice and a right to challenge that. That's a fundamental procedural due process right. Okay. Would you like to save your little time? Yes, I will. Thank you, Mr. Friedman. Mr. Fowler? You're not really splitting time, are you? It's up to the court. If the court would like to hear from the intervener... All right. Well, what's that? Okay. You may proceed. If it pleases the court, the petitioners have not alleged that they made employment decisions that were under duress or coercion. And the board does not have jurisdiction over voluntary choices, employment choices. Here they were voluntary retirements. Four petitioners retired. There were voluntary transfers. Now, Ulrich's the tough case here, isn't it? That's because there's a right stamped at some point in one of those papers. You probably had it right in front of you. It said, involuntarily separated. And that falls into a different category than a mere reassignment, doesn't it? Well, the terminology involuntary means one thing when discussing board jurisdiction and the board determines whether it has jurisdiction over a case. It means something different to the Office of Personnel Management when the Office of Personnel Management looks at a separation and determines whether it can award a discontinued service annuity. Suppose he was terminated, involuntarily terminated. Suppose we accept that. Does he have a right to appeal? He does not have a right under the RIF regulation. It's not a RIF separation. Okay. But under FRI, under this court's decision of FRI, doesn't he have a right to challenge the reassignment and doesn't the agency have an obligation to justify the reassignment? He may have had a right if he had not retired and if the agency decided to take any adverse action against him. So what happened was he was sent the paperwork from the agency and he completed it and he requested a discontinued service annuity. Did he raise the FRI point below? No. And explain the big stamp involuntarily separated. Okay. To get back to that, the separation, we have four petitioners of the six who separate. Separation is a requirement for any federal retirement annuity. In the case of the other three, they retired under 5 U.S.C. 8336E2, under special authority from the Office of Personnel Management. Mr. Oldridge missed that deadline. He retired under 8336E1, which covers involuntary separations. So according to the Postal Service, the purpose of that stamp was to help him qualify for a discontinued service annuity from OPM. Right. But as I was explaining before, voluntariness for purposes of the Board's jurisdiction is different, is distinct from what that means when OPM is considering whether to award an annuity. From their perspective, OPM... What case says that? Well, it's within their regulations and... But the involuntary stamp was done to help Mr. Oldridge. Exactly. And to get back to Judge Baxter's question, the best case I think for Mr. Oldridge, and it's factually indistinguishable, is the Court of Claims case in Rudd, which involved Mr. Rudd was facing a directed reassignment to a different geographic location. He declined it and he retired. And the Court of Claims said that is a voluntary choice. And so that's factually indistinguishable. I mean, it's factually indistinguishable for Mr. Oldridge in this case. As far as the voluntariness question, again, from OPM's perspective, declining a reassignment, a geographic reassignment to another location is normally going to be considered involuntary from OPM's perspective. There are certain conditions. For example, it would not be involuntary if the employee also turned down a transfer offer in the same location. But typically, that is going to be involuntary from the perspective of whether to award the annuity. From the Board's jurisdictional perspective, the Board has no jurisdiction at all over directed reassignments of the same grade and pay, even though the reassignment could be in Timbuktu. It's well established that a choice between two alternatives, whether attractive or unattractive alternatives, is still a voluntary choice. From the Board's jurisdictional, isn't it possible that the Postal Service can say, you know, we need to reduce our force, but that subjects us to a certain amount of scrutiny. Why don't we just transfer people from New York to Los Angeles? They won't take it. They'll separate and we'll get the same result. If that was what was going on, how would this court or the MSPB get its hands on that situation? The Board does consider, in these cases, coercion. There's no allegation of coercion or direct in this case. But that's why the Board will look at whether a reassignment is bona fide, whether it was done for proper purposes, as opposed to trying to coerce someone. You put the burden on the agency to justify the reassignment, right? Well, first there needs to be an allegation of coercion before we even get to that question. So was there an allegation here? Not in this case. There's no allegation of coercion in this case. In the absence of an allegation of coercion, the Board has no jurisdiction to look into these reassignments. Once there's an allegation made and it's a non-frivolous allegation, then the agency can come forward with the bona fide reasons to act. Did this case proceed before the Board solely on the theory that there was a RIF here? As I understand the allegations, there was the allegation that there was a RIF, and there was the allegation that the Board has jurisdiction under USERRA. And those were the two bases of jurisdiction. And then the Board, the administrative judge... The allegation with respect to USERRA was dependent on there being a RIF? I think that was an independent basis asserted by the petitioner. What did you understand that claim to be? Assuming that there was not a RIF, what was the USERRA claim? Well, the problem with the USERRA claim is USERRA, to make a claim of discrimination under USERRA, the claim needs to be that the employee's military service was considered in an improper way and motivated a discriminatory action and discrimination is based on their military background. In this case, the petitioners are alleging that there was no consideration of their military service, and there should have been. So it's the opposite of the allegation one would make to assert a USERRA claim. And that's why the administrative judge said, this sounds like it's a VIOA claim because they are asserting that their veterans preference should have been considered. It's really not a USERRA claim at all because the allegation is not there. There needs to be an allegation of discrimination based on their military service. As I understand their claim, it's really a VIOA claim. The petitioners waived the claim, and in any event, they admit that they did not exhaust the remedies at the Department of Labor. So there's no basis for that. In sum, the board has no jurisdiction to look into these voluntary actions. And in the absence of that jurisdiction, the board properly dismissed these appeals. If there are no further questions, I'll... Okay, thank you, Mr. Gallagher. Mr. Krettheim, do you have something to add? Thank you. Good morning. May it please the Court. We certainly agree with the comments of the board. The fundamental misunderstanding that the petitioners have here is that they fail to recognize that there simply was no reduction in force that took place. The Postal Service's efforts to avoid a RIF were successful here. Some of the petitioners voluntarily retired. Do you agree that Ulrich didn't voluntarily retire? Mr. Ulrich did voluntarily retire. He applied for a discontinued retirement annuity. Why did you label it an involuntary termination? Well, as the board explained, that was so that he could, in fact, qualify for a discontinued service retirement. Keep in mind what Mr. Ulrich's claim is, and that is that there was a RIF, a reduction in force, and therefore he should have been notified of his RIF rights. This Court has made abundantly clear that if there is no RIF that took place, the agency is not required to apprise employees of any RIF rights. And here, Mr. Ulrich, in addition to voluntarily retiring, his removal took place because he refused a transfer. It didn't take place because of any RIF. And we know that agencies are entitled to remove employees if they refuse a transfer. Under the Frey case, what this Court has said is that we look at the bona fides of the agency's decision. Keep in mind that Mr. Ulrich and the other petitioners represented to the board that they were not challenging the bona fides of the agency's decision to transfer them. So we respectfully request that the Court affirm the board's decision. Thank you, Mr. Freheim. Mr. Freeman, you have two and a half minutes. There is no administrative record in this case. There is no discovery, there was no hearing, and there was a reduction in force. Let's assume we reject that position. We say, no, the board was right, this wasn't a reduction in force. Ulrich was terminated for refusing to accept reassignment. What is the claim that you have under those hypothetical circumstances? Deprivation of procedural due process. How so? Under MSPB regulations, he is entitled to procedural due process before he is terminated. Procedural? Procedural due process. I don't understand. My hypothetical assumes there was no RIF. What is your claim under those circumstances? A termination is considered an adverse action. Any agency must abide by adverse action procedures, including procedural due process, where an employee has to be apprised, be given an opportunity to respond, and then within a period of time, 30 days later, is told of its decision. This is a fundamental due process issue. The Federal Circuit has decided myriad cases on this issue. There was a reduction in force. There was a reduction in force because there were... This is the Postal Service. Do all those rules apply the same way? They're not an agency. They're different rules for them, and I'm not absolutely certain as to all the rules, but it sounds to me like you're giving me kind of the standard agency rules, not the Postal Service rules. These rules apply to every single petitioner in this case because they were preference eligibles. There is no evidence that Wimberley voluntarily accepted a lower grade. There is no evidence that the petitioners, the other petitioners, voluntarily resigned or retired. There's no evidence. There's been no hearing. They have been denied their fundamental right to a hearing in order to develop the case, but even putting that aside, there's clear irrefutable evidence that there was a reduction in force. There were petitions that were eliminated, and Ulrich and Wimberley were two individuals who were reduced in grade or terminated. That falls within the parameters of a RIF. The law is the law is the law. Thank you, Mr. Friedman. I have your argument.